NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THOMAS ISLEY, et al.,<br>Plaintiffs,<br>v.<br>BMW OF NORTH AMERICA, LLC,<br>Defendant. | **Civil Action No. 19-12680-AME**<br><br>**OPINION** |

**ESPINOSA, U.S.M.J.**

This matter is before the Court on the motion by defendant BMW of North America, LLC ("BMW NA") to enforce the Final Approval Order and enjoin Todd Funkhouser ("Funkhouser") from proceeding with a lawsuit pending in Texas state court [D.E. 76]. Funkhouser, who appears in this action as an interested party, opposes the motion. The Court has considered the parties' written submissions and heard argument on March 25, 2026. For the following reasons, the motion is granted.

## I. BACKGROUND

The above-captioned class action, closed by order entered on January 5, 2022, arose out of consumers' purchase or lease of certain BMW vehicles equipped with an engine that allegedly consumed excessive oil (the "Oil Consumption Defect") and BMW NA's alleged failure to disclose the Oil Consumption Defect to consumers. Separately, Funkhouser filed an action in Texas state court concerning engine failure in the BMW vehicle he purchased at a BMW dealership in El Paso, Texas. Below, the Court provides a synopsis of the class action's factual

and procedural background, followed by a summary of the relevant facts pertaining to Funkhouser's individual action.

**A. The Isley Class Action**

On May 17, 2019, plaintiff Thomas Isley filed this action in the District of New Jersey, individually and on behalf of a putative nationwide class of individuals who had purchased certain model BMW vehicles equipped with the N63TU engine and its variants, claiming that engine's alleged Oil Consumption Defect caused them to sustain various economic losses (the "Isley Class Action"). *See* Compl. ¶¶ 1-3 (D.E. 1). Shortly thereafter, an Amended Complaint was filed, joining additional named plaintiffs to the action. *See* Am. Compl. (D.E. 6). The Amended Complaint alleged the Oil Consumption Defect caused the affected vehicles to need extra oil top-offs between regularly scheduled oil changes and resulted in substantially negative impacts on the engine, including premature wearing of its components and even catastrophic and total engine failure. *Id.* ¶¶ 30-35. Isley, for example, alleged that, due to the Oil Consumption Defect, the BMW X5 model he purchased in 2015 experienced total engine failure in 2018, and further alleged that the problems persisted even after he replaced the vehicle's engine. *Id.* ¶ 8. According to the Amended Complaint, the Oil Consumption Defect not only caused consumers to incur out-of-pocket expenses in connection with increased oil needs, repairs, and/or engine replacement, but also posed a unreasonable safety risk, "because it can cause engine failure while the Class Vehicles are in operation at any time and under any driving conditions or speeds, thereby exposing the Class Vehicle drivers, their passengers, and others who share the road with them to serious risk of accidents and injury." *Id.* ¶ 35. The Isley Class Action's Amended Complaint asserted various claims for breach of warranty, unjust enrichment, fraud, and violation of state consumer protection statutes, among others, seeking relief for BMW NA's

failure to disclose the Oil Consumption Defect and the associated harm to consumers despite allegedly knowing of the problem at the time the vehicles were purchased or leased. *Id.* ¶ 36.

In 2021, the parties to the Isley Class Action reached a classwide negotiated resolution (the "Settlement"), memorialized in the settlement agreement executed July 8, 2021 (the "Settlement Agreement"). *See* Settlement Agreement, attached to July 23, 2021 Decl. of Frederick J. Klorczyk III, Ex. 1 (D.E. 54-2). On August 3, 2021, upon motion for preliminary approval under Federal Rule of Civil Procedure 23(e), the Court entered an Order preliminarily approving the Settlement ("Preliminary Approval Order"). *See* D.E. 55. The Preliminary Approval Order certified a nationwide Settlement Class consisting of owners and lessees of "BMW 5 Series, 6 Series, 7 Series, X5 or X6 vehicles that contain the N63TU1 engine." Preliminary Approval Order ¶ 3. It also approved the proposed notice to the Settlement Class ("Class Notice") and plan for its distribution (the "Notice Plan") and directed implementation of the Notice Plan in accordance with the terms of the Settlement. *Id.* ¶ 7. Additionally, under the Preliminary Approval Order, class members not wishing to participate in the Settlement were required to submit a written exclusion request to the appointed Settlement Administrator by November 30, 2021. *Id.* ¶ 9.

Thereafter, the Isley Class Action Plaintiffs filed an unopposed motion for final approval of the Settlement. The Court held a final fairness hearing, found that the Notice Plan had been properly implemented by the designated settlement claims administrator, and concluded the Isley Class Action settlement was fair, reasonable, and adequate. Pursuant to Rule 23, the Court granted final approval to the Settlement Agreement and all its terms and conditions, entering the Final Order and Judgment on January 10, 2022 (the "Final Approval Order"). *See* D.E. 69.

The Final Approval Order applies to all Settlement Class Members, except for forty-seven identified individuals who had timely and validly opted out of the Settlement. Final Approval Order ¶ 12. It defines the Settlement Class Members as follows:

> All current (as of the Effective Date) and former owners and lessees in the United States, including the District of Columbia and Puerto Rico, of certain of the following U.S.-specification BMW vehicles distributed for sale, registered, and operated in the United States, including the District of Columbia and Puerto Rico: 2013-2019 650i/xi (TU1), 2013-2018 650i/xi Conv (TU1), 2013-2017 650 i/xi Coupe (TU1), 2013-2015 750i/xi (TU1), 2013-2015 750Li/Lxi (TU1), 2013-2017 550i/xi (TU1), 2014-2016 550i/xi GT (TU1), 2014-2018 X5 (TU1), and 2015-2019 X6 (TU1).

*Id.* ¶ 4.[1] Excluded from this Settlement Class are, in relevant part, "anyone claiming personal injury or property damage other than to a Class Vehicle due to excessive oil consumption." *Id.* ¶ 5. The Final Approval Order expressly states that "the terms of the Settlement Agreement, including the Released Claims against all Released Parties, and of the Final Approval Order and Judgment, are binding in all respects on the Plaintiffs and all Settlement Class Members." *Id.* ¶ 12.

Additionally, the Final Approval Order contains release provisions and enjoins further pursuit of such "Released Claims," as defined by the Settlement Agreement. *Id.* ¶¶ 19, 21. Under its terms, the Final Approval Order operates as the full and final release by Plaintiffs and Settlement Class Members of "all Released Parties from all Released Claims, as set forth in the Settlement Agreement." *Id.* ¶ 19. The Released Claims consist of "any and all claims, including demands, rights, liabilities, and causes of action, of every nature and description that were asserted or could have been asserted in this action, which relate to oil consumption in the Class Vehicles, excluding claims for property damage or personal injury." Settlement Agreement §

[1] The BMW models listed in the Settlement Class definition are referred to as the "Class Vehicles" throughout the Settlement Agreement and Final Approval Order.

VII, A.[2] Of critical relevance to this motion, the Final Approval Order imposes an injunction against Plaintiffs and Settlement Class Members under which they are "permanently barred and enjoined from commencing, instituting, continuing, pursuing, maintaining, prosecuting, or enforcing any Released Claims (including, without limitation, in any individual, class or putative class, representative, collective or other action or proceeding, directly or indirectly, in any judicial, administrative, arbitral, or other forum) against any of the Released Parties." Final Approval Order ¶ 21.

**B. Funkhouser's Texas Action**

On December 2, 2019, while the Isley Class Action was pending but not yet settled, Funkhouser filed a Petition in the 448th Judicial District Court of El Paso County, Texas, seeking relief for the alleged premature failure of his BMW's engine and related harm and naming three defendants: BMW NA; BMW of El Paso, the dealership where Funkhouser purchased his vehicle; and Christian Ugarte, the dealership's service manager (the "Texas Action"). *See* Petition ¶¶ 2-4, 8-10.[3] According to the Petition, Funkhouser purchased a 2013 BMW 750i xDrive sedan, in January 2014, and noticed problems within months of owning it. *Id.* ¶¶ 8-9. He alleges that these problems led to his vehicle's "total engine failure" in December 2018. *Id.* ¶ 10. Funkhouser further alleges he thereafter took the vehicle to BMW of El Paso for costly and time-consuming repairs, but the problems persisted. *Id.* The Petition alleges that due to the ongoing engine issues, Funkhouser's vehicle lost speed during highway travel on two occasions in 2019, nearly resulting in an accident each time. *Id.* It further alleges the engine was

[2] There is no dispute that the "Released Parties" identified by the Settlement Agreement includes BMW NA, its parent companies, and subsidiaries, but the broadly defined term also includes, among others, "authorized BMW dealers, attorneys, and all other persons or entities acting on their behalf." Settlement Agreement, § VII, A.

[3] The Texas Action Petition is attached to the Weller Declaration at Exhibit A (D.E. 76-4) and to the Downey Declaration at Exhibit A (D.E. 81-1, at 5).

replaced several times over the course of 2019, yet BMW of El Paso failed to remedy the problem and/or provide Funkhouser with an explanation as to the cause of the failure, despite his requests for information from the dealership and its manager. *Id.* ¶¶ 10-13. The Texas Action Petition, as filed, asserted seven claims against the defendants named therein for their alleged failure to repair the vehicle and alleged fraudulent conduct, as follows: (1) breach of contract, (2) fraudulent inducement, (3) violation of the Texas Deceptive Trade Practices Act ("DTPA"), (4) negligent misrepresentation, (5) breach of implied warranty of merchantability, (6) breach of express warranty, and (7) unjust enrichment. *Id.* ¶¶ 14-34.

On February 10, 2022, counsel for BMW of El Paso in the Texas Action sent Funkhouser's attorney an email attaching a copy of the Isley Class Action's Final Approval Order and inquiring whether Funkhouser would participate in the Settlement, as it appeared his vehicle fell within the scope of the Settlement Class. *See* Weller Decl. Ex. F. The email also expressed concern over whether the Final Approval Order would affect the mediation scheduled in the Texas Action. *Id.* On that same date, Funkhouser's attorney replied, copying counsel for BMW NA, as follows:

> I am not aware of his [Funkhouser's] involvement in the class settlement or of any notice to him; however, I will ask him. After reading the potential compensation in the notice, I do not perceive this changing his position as the amounts paid to settling parties are minimal and do not contemplate many of the claims alleged by my client.

Weller Decl. Ex. G. Shortly thereafter, counsel BMW NA emailed Funkhouser's attorney to state that, in BMW NA's view, Funkhouser was bound by that settlement. *Id.* After acknowledging Funkhouser's position as to the Isley Class Action Settlement, BMW NA's counsel wrote, in relevant part: "However, Mr. Funkhouser did not opt-out of participation in that class action, which quite clearly dealt with the same subject matter as the claims he asserted in El Paso

County." *Id.* The parties to the Texas Action nevertheless proceeded to engage in mediation on March 24, 2022, but failed to reach a negotiated resolution. Downey Decl. ¶ 24.

In December 2022 and again in November 2023, BMW NA amended its discovery responses in the Texas Action to state it would rely on the affirmative defenses of release, waiver, and res judicata, based on the Isley Class Settlement and Final Approval Order. *See* Weller Decl. Ex. H, I. On November 2, 2023, BMW NA amended its Answer to assert these affirmative defenses. *Id.* Ex. J. On November 13, 2024, BMW NA filed a motion for summary judgment, arguing the Final Approval Order barred Funkhouser's claims; BMW of El Paso later filed its own substantially similar motion. *See* Weller Decl. ¶¶ 5-6 and Ex. B. Funkhouser opposed the motions, arguing his claims were not barred because he failed to receive notice of the Isley Class Settlement and because BMW NA and BMW of El Paso had waived their right to assert the defenses of waiver, release, and res judicata by virtue of actively participating in the Texas Action without objection for years.[4] *See id.* ¶ 7 and Ex. C.

The motions for summary judgment in the Texas Action were granted in part and denied in part. *See id.* ¶ 9 and Ex. E. Although the claims for breach of contract, breach of express and implied warranty, and fraudulent inducement were not permitted to proceed, Funkhouser's claims for violation of the Texas DTPA, negligent misrepresentation, and unjust enrichment survived the motion. *See id.* Ex. E. The Texas Court delivered that decision by way of a February 5, 2025 email to counsel for the parties in the Texas Action from the Court Coordinator, who instructed counsel to prepare orders. *Id.* The Texas Court did not issue an Opinion or statement of reasons explaining why certain claims were barred while others were not. Although BMW NA

[4] In particular, as to res judicata, Funkhouser relied on a narrow exception to the doctrine recognized by the Fifth Circuit and appellate courts in Texas, under which claim splitting, typically prohibited, may be permitted in certain circumstances when a defendant acquiesces to litigation in two suits for a prolonged period of time. *See* Funkhouser Opp'n in Texas Action at 20, Weller Decl. Ex. C.

and BMW of El Paso then requested clarification of the split summary judgment ruling, the Texas Court decline to do so. *Id.* ¶ 14 and Ex. K. A trial was set to begin on November 18, 2025, but was thereafter vacated. Downey Decl. Ex. M.

## II. DISCUSSION

On this motion, BMW NA seeks an Order from the Court enforcing the Final Approval Order and enjoining Funkhouser from further prosecution of his claims in the Texas Action. BMW NA correctly asserts the Court is empowered to enter such an injunction pursuant to its continuing jurisdiction under the Final Approval Order and its enforcement authority under the All-Writs Act, 28 U.S.C. § 1651.

In relevant part, the Final Approval Order states:

> [T]he Court shall retain continuing jurisdiction over the Action, the Parties and the Settlement Class, and all matters relating to the interpretation, administration, implementation, effectuation and enforcement of the Settlement Agreement and this Settlement, which includes, without limitation, the Court's power pursuant to the All Writs Act, 28 U.S.C. § 1651, or any other applicable law, to enforce the above-described bar on and injunction against prosecution of any and all Released Claims.

Final Approval Order ¶ 25. The All-Writs Act, in turn, provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. This authority extends to the enforcement of orders concerning federal class action settlements through the Court's injunctive power. *See In re Prudential Ins. Co. of Am. Sales Pracs. Litig. (Thomas)*, Civ. No. 95-4704, 2007 WL 2885814, at *3 (D.N.J. Sept. 27, 2007) ("the All-Writs Act empowers this Court to protect its jurisdiction in overseeing the administration of class action settlements by issuing injunctions to prevent interference with its orders holding that, under the All-Writs Act, the District Court may issue injunctions to protect its authority and

oversight in the administration of class action settlements).[5] *See also In re The Prudential Ins. Co. of Am. Sales Pracs. Litig. (LaMarra)*, 314 F.3d 99, 103-04 (3d Cir. 2002) (holding that, although a federal court's injunctive power under the All-Writs Act is limited by the Anti-Injunction Act, 28 U.S.C. § 2833, a district court has the power to enjoin suits that interfere with or contravene a final order in class action litigation under the Anti-Injunction Act's "in aid of jurisdiction" exception, reasoning that complex federal litigation is "especially susceptible to disruption by related actions in state fora"); *In re The Prudential Ins. Co. of Am. Sales Pracs. Litig. (Lowe)*, 261 F.3d 355, 365-66, 368 (3d Cir. 2001) (holding the All-Writs Act, in concert with the Anti-Injunction Act, authorizes a district court to enjoin a member of the settlement class from pursuing an individual state court action, observing that "[i]t is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action."). The Court's injunctive authority under the All-Writs Act permits it to enforce the principle of res judicata and bar the relitigation of claims resolved by settlement, including claims released under a binding class action settlement. *In re Prudential*, 2007 WL 2885814, at *2. "When a class action settlement is approved under Fed. R. Civ. P. 23(e) and the requirements of due process are found to have been satisfied, res judicata attaches and all individual class members who have not opted-out are bound by the terms of the class action settlement." *Id.*

Here, Funkhouser does not challenge the Final Approval Order's validity or the Court's continuing jurisdiction thereunder to enforce its provisions with the aim of protecting the Isley

[5] This decision stems from the final approval order entered by the district court in the class action captioned *In re Prudential Insurance Company of America Sales Practices Litigation. See* 962 F. Supp. 2d 450 (D.N.J. 1997) (certifying class and approving settlement under Federal Rule of Civil Procedure 23), *aff'd* 148 F.3d 283 (3d Cir. 1998). Numerous motions to enforce that final approval order and enjoin other actions ensued, resulting in related but separate written decisions, many of which are cited throughout this Opinion.

Class Settlement. He concedes that, based on its make and model year, his BMW meets the criteria of a Class Vehicle, as defined by the Settlement, and acknowledges he did not submit a timely request for exclusion from the Class, that is, did not opt out of the Settlement. Further, Funkhouser does not dispute that the Texas Action seeks redress for harm related to his vehicle's engine failure, including alleged deceptive conduct by BMW NA and BMW of El Paso and breach of their obligations to provide him with a vehicle fit for use.

Nevertheless, Funkhouser argues he should not be enjoined from proceeding with his claims in the Texas Action for several reasons. First, he maintains his claims fall outside the scope of Released Claims covered by the Final Approval Order. Second, Funkhouser asserts he did not receive notice of the Class Settlement, either through the means prescribed by the Isley Class Action Notice Plan or through direct disclosure by BMW NA while litigating the Texas Action. Third, he contends BMW NA waived its right to seek an injunction against his prosecution of the Texas Action by continuing to actively defend against his claims and belatedly asserting the defenses of release, waiver, and res judicata. Fourth, Funkhouser argues he should be relieved from the Isley Class Settlement and Final Approval Order under Federal Rule of Civil Procedure 60. The Court will address each argument in turn.

**A. Released Claims**

Funkhouser argues his claims fall outside the purview of the Isley Class Settlement and thus are not barred by the Final Approval Order's injunction against pursing Released Claims. He acknowledges the Texas Action seeks relief for engine failure in a BMW that meets the definition of a Class Vehicle but stresses that both the alleged harm and the relief sought there are distinct from the Isley Class Action and the Settlement. Funkhouser contends the Isley Settlement includes only claims related to the alleged Oil Consumption Defect, whereas the

"gravamen of [his] causes of action in the Texas Litigation are deceitful workmanship, unrelated to oil consumption or at least a fact issue for the jury to decide …." Opp'n Br. at 2. He states that in the Texas Action, his claims "are not simply based on oil consumption," as he alleges that the dealership BMW of El Paso and its manager gave him shifting explanations for the malfunction of his vehicle, and therefore maintains it is imperative that a jury decide the cause of the malfunction.[6] *Id.* at 3. Funkhouser further argues that because the Isley Class Settlement does not bar personal injury claims, his claims may proceed insofar as they seek recovery for the anxiety, emotional distress, and other psychological trauma allegedly caused by BMW NA and BMW of El Paso's deceptive practices. In particular, he relies on his claim under the Texas DTPA, which he maintains authorizes damage awards for such mental anguish and, as such, falls within the Released Claims' personal injury carve out.

The Isley Class Settlement defined the "Released Claims" broadly to include "any and all claims, including demands, rights, liabilities, and causes of action, of every nature and description that were asserted or could have been asserted in this action, which relate to oil consumption in the Class Vehicles, excluding claims for property damage or personal injury." Settlement Agreement, § VII, A. Indisputably, the Texas Action Petition seeks relief for the alleged premature engine failure of a Class Vehicle. Pet. ¶¶ 9-12. Although the Petition does not identify the precise nature of this failure, the litigation record confirms that the claims relate to vehicle's ongoing, excessive oil consumption, as shown by the following information from the Texas Action:

---

[6] Funkhouser characterizes the various reasons he was given by BMW of El Paso for the vehicle problems as a "party admission" concerning the basis of his claims. *See* Opp'n at 3. Without expressing any view on the evidentiary value of BMW of El Paso's purported statements, this Court notes that throughout his opposition brief, Funkhouser conflates movant BMW NA and BMW of El Paso, a distinct legal entity.

- The vehicle service records, which were submitted in support of BMW NA's motion for summary judgment, showed the vehicle was burning excessive amounts of oil, as recorded in the notes of routine maintenance appointments between 2015 and 2017. *See* BMW NA Motion for Summary Judgment ("MSJ") at ¶ 4 and Ex. 6, attached to Weller Decl. Ex B (D.E. 76-5 at 4 of 238).
- On January 10, 2019, Funkhouser took his vehicle to the dealership to address a "drivetrain malfunction," according to the service records. At that time, the vehicle displayed "multiple faults for low engine oil pressure" despite receiving an oil refill on December 8, 2018, just weeks before the malfunction. It was determined the vehicle needed a new engine. BMW NA MSJ at ¶ 2 and Ex. 3 and 4, attached to Weller Decl. Ex. B (D.E. 76-5 at 44 of 238).
- In an April 5, 2019 email to BMW NA, Funkhouser expressed frustration with the vehicle's continuous problems over the course of ownership, including the need for the engine replacement in 2019 and subsequent failure of the engine only three days after the replacement was completed. He stated: "I have no words for how angry I am at this point as that car has had oil burning problems for which I am on written record of complaining about ever since I bought it." BMW MSJ at ¶ 3 and Ex. 5, attached to Weller Decl. Ex. B (D.E. 76-5 at 55 of 238); Downey Decl. Ex. C. (D.E. 81-1 at 45 of 446).
- In an April 12, 2019 email from Funkhouser to BMW NA, he writes: "I have years of email correspondence complaining of excessive oil burning in car," which ultimately lead to total engine failure in January 2019, only four weeks

after topping off the oil.  and need for engine replacement. BMW MSJ at ¶ 3 and Ex. 5, attached to Weller Decl. Ex. B (D.E. 76-5 at 56-57 of 238).

- On January 28, 2019, Funkhouser emailed attorney Sergei Lemberg, seeking representation in connection with a potential suit against BMW NA and BMW of El Paso due to his vehicle's excessive consumption of oil vehicle issues. [7] In that email, he states: "I have been complaining on email to BMW Corp since 2014/2016 re excessive burning of oil." Jan. 27, 2025 Funkhouser Aff. at ¶ 12 and Ex. E, submitted with Opp'n to BMW NA MSJ, attached to Weller Decl. Ex. C (D.E. 76-6 at 90 of 287).

- In his further communication with Mr. Lemberg, Funkhouser repeated that he was "seeking action against BMW for years of deception on this car and have email correspondence detailing their ongoing excuses for the oil problem." *Id.* Mr. Lemberg replied that "if [Funkhouser's] car has an n63 engine oh, there was a class-action for them called bang versus BMW" and informed Funkhouser that if he did not opt out of that class action, he is a member of the class and has no further recourse. *Id.* (D.E. 76-6 at 89 of 287).

- On February 2, 2019, Funkhouser contacted the settlement administrator for the class action litigation captioned *Bang v. BMW of North America, LLC*, which had been brought in the District of New Jersey as Civil Action No. 15-6945, to see if he was part of that class and was thereafter informed that he was not part of the

[7] Funkhouser produced this communication in discovery. Downey Decl. ¶ 12.

*Bang v. BMW* settlement class.[8] *See* Jan. 27, 2025 Funkhouser Aff. at ¶ 12 and Ex. F. (D.E. 76-6 at 93 of 287).

The Texas Action Petition together with the record of that litigation make clear that Funkhouser's claims concern a Class Vehicle's engine failure due to excessive oil consumption and related wrongdoing, giving rise to causes of action for breach of warranty, misrepresentation, and deceptive trade practices, among others. While some claims have been terminated on summary judgment, the Texas Action as a whole overlaps substantially with precisely the harm at issue in the Isley Class Action, which likewise concerns various losses to Class Vehicle consumers stemming from the alleged Oil Consumption Defect. As set forth in the Isley Class Action Amended Complaint, these losses included total engine failure and its associated safety risk, premature need for replacement of the engine and/or its components, and persistent malfunction even after replacement of the allegedly faulty engine.

Notwithstanding that substantial overlap, Funkhouser argues his claims are not barred because there has not yet been a factual determination of the cause of his vehicle's engine failure. This argument is unavailing. Whether the Isley Class Settlement encompasses his claims does not turn on the outcome of a jury trial in the Texas Action, and the Court need not wait for a verdict to determine if the Final Approval Order's release applies. The nature of the various claims set forth by Funkhouser in the Petition and their factual basis make it clear that they fall within the scope of the Settlement and its broad release of all claims, of any nature, related to N63TU engine failure.

Funkhouser's effort to shoehorn his action into the Settlement's carve out for personal injury claims is also unavailing. He points out that under the Texas DTPA, a consumer plaintiff

[8] It appears *Bang v. BMW* concerned allegations of a similar oil consumption defect in an earlier version of the N63 engine than the one at issue in the Isley Class Action.

may recover mental anguish damages where the deceptive practices have been knowing or willful. Funkhouser relies on that statutory provision to argue his Texas DTPA clam is a personal injury claim because, as alleged in his Petition, the knowing misconduct by BMW NA, BMW of El Paso, and Ugarte caused him to suffer PTSD and emotional distress.

However, the Texas DTPA creates a cause of action for unconscionable or deceptive trade practices, not for personal injury. It is a consumer protection law targeting "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a). The Texas Supreme Court has held that the Texas DTPA was enacted to "'protect consumers against false, misleading, and deceptive business practices [and] unconscionable actions'" and deter deceptive business practices. *Latham v. Castillo*, 972 S.W.3d 66, 68-69 (Tex. 1988) (quoting Tex. Bus. & Com. Code § 17.44). The statute provides a non-exhaustive list of such unlawful practices, among others, "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" and "knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service." Tex. Bus. & Com. Code § 17.46(b).

The Texas DTPA creates a private cause of action to make the consumer whole for harm suffered as a result of various unlawful trade practices, as enumerated in the statute. *Id.* § 17.50(a). Concerning damages, the statute provides that a consumer plaintiff who establishes that a defendant has engaged in a prohibited "false, misleading or deceptive act" may recover economic damages caused by that act, and, in some circumstances, additional amounts for mental anguish. § 17.50(b). It states:

> (b) In a suit filed under this section, each consumer who prevails may obtain:
>
> (1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages.

*Id.* § 17.50(b). In other words, the Texas DTPA permits recovery of economic damages only, with an additional award for mental anguish caused by the defendant's actionable conduct, if found knowing or intentional. *See Perez v. Am. Med. Sys., Inc.*, 461 F. Supp. 3d. 488, 499 (W.D. Tex. 2020) (construing Texas DTPA and holding Section 17.50 "[s]ubsection (b) provides the general rule for recovery of damages when plaintiffs sue directly under the DTPA …. It provides only for the recovery of economic damages, and, upon a showing of knowing or intentional misconduct, damages for mental anguish."). Reinforcing that a cause of action under the Texas DTPA does not extend to non-economic personal injury damages, the statute also states, in relevant part, that "nothing in this subchapter shall apply to a cause of action for bodily injury or death or for the infliction of mental anguish" except as provided in subsection (b). Tex. Bus. & Com. Code § 17.49(e). Indeed, construing the provisions at § 17.49(e) and § 17.50(b) together, the Western District of Texas held that, although nothing in the Texas DTPA forecloses personal-injury like claims, its plain text makes clear that only economic damages for such injury, for example medical expenses, repair and replacement costs, and lost wages, may be recovered under the statute. *Perez*, 461 F. Supp. 3d. at 499-50 (a plain reading of the statute's

definition of economic damages [in Section 17.50(b)] also supports the conclusion that Section 17.49(e) was only intended to reinforce a prohibition on recovery of non-economic bodily injury damages.").

Funkhouser attempts to persuade this Court that his Texas DTPA claim is not within the scope of Released Claims merely because the statute permits enhanced mental anguish damages where the defendant has engaged in a deceptive trade practice knowingly or intentionally. But, neither the plain text of the statute nor any authority cited by Funkhouser support his argument that the DTPA claim can be construed as a personal injury claim. To the contrary, as discussed above, state and federal courts in Texas have held that, notwithstanding the mental anguish damages available thereunder, the Texas DTPA does not provide a cause of action for "personal injury." *See Perez*, 461 F. Supp. 3d at 506 (citing *Lea v. Wyeth LLC*, Civ. No. 03-1339, 2011 WL 13192701, at *19 (E.D. Tex. Oct. 28, 2011) and *Akin v. Bally Total Fitness Corp.*, Civ. No. 10-05-00280, 2007 WL 475406, at *3–4 (Tex. Ct. Appeals Feb. 14, 2007)).

Here, Funkhouser's claimed mental anguish was allegedly caused by the knowingly or intentionally deceptive conduct by BMW NA, BMW of El Paso, and/or Ugarte in selling him a vehicle with a defective engine and in his continued dealings with them as he attempted to diagnose, repair, and remedy the problem. Although Funkhouser asserts what appears to be a cognizable claim for alleged unconscionable business practices under the Texas DTPA, it is the very nature of that claim which prevents it from falling within the Final Approval Order's carve out for personal injury claims. The Texas DTPA claim must be rooted in deceptive trade practices, breach of warranty, or other similar misconduct targeted by the statute, and thus is not a personal injury claim.

For these reasons, the Court finds that all claims asserted by Funkhouser in the Texas Action fall within the scope of Released Claims and are therefore subject to the Final Approval Order's provision enjoining Class Members from litigation of such claims.[9]

**B. Notice**

Funkhouser argues he cannot be bound by the Final Approval Order because he was not made aware of the Isley Class Settlement, either formally through the Notice Plan endorsed by the Preliminary Approval Order or through other means, thus depriving him of his right to opt out of the Settlement. In a sworn statement signed on January 27, 2025, and submitted to the Texas Court, Funkhouser asserted he was not previously aware of the Isley Class Action and "never received the Notice Packet that BMW NA and BMW El Paso claim to have been sent to [him] on October 29, 2021." Funkhouser Aff. ¶ 11 (attached to Downey Decl., Ex. B, D.E. 81-1). He also argues that, apart from the lack of actual mailed notice through the Isley Class Action Notice Plan, BMW NA failed to disclose the Class Settlement during litigation in the Texas Action, despite its affirmative duty of disclosure under Texas rules of procedure, according to Funkhouser.

[9] Although not raised in Funkhouser's brief, Funkhouser suggested at oral argument that his claims against BMW of El Paso and/or Ugarte might proceed because they concern misrepresentations and/or deceptive trade practices that are potentially outside the scope of the Released Claims. This argument is unfounded, as there is no indication the Texas Action seeks relief against these parties for misconduct wholly unrelated to the alleged deception, failure to honor warranties, and repeated but unsuccessful repair efforts Funkhouser endured in connection with his vehicle engine failure and the Oil Consumption Defect. At argument, Funkhouser also raised for the first time the theory that because the Texas Action seeks relief for damage to his BMW, it asserts property damage claims that are carved out of the Isley Class Settlement. But, again, this argument is unfounded and, frankly, puzzling. Funkhouser clearly claims in the Texas Action that his BMW (a Class Vehicle) sustained damage related to the Oil Consumption Defect. That is the very harm at issue in the Isley Class Action and addressed by the resolution memorialized in the Settlement Agreement. Indeed, to remove all doubt, the Settlement Agreement expressly states, in relevant part, that only those "claiming personal injury or property damage other than to a Class Vehicle due to excessive oil consumption" are excluded from the scope of the Settlement. Settlement Agreement at 3 and § 1, ¶ FF (defining "Settlement Class Members or Settlement Class"). The Court discerns no claim in the Texas Action for damage to property *other than* to a Class Vehicle due to excessive oil consumption.

This basis for relief from the Final Approval Order is unavailing. Under Federal Rule of Civil Procedure Rule 23, class members are entitled to the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Notice to class members is fair and adequate so long as provided in accordance with "the means likely to inform potential class members" *Serio v. Wachovia Sec.*, LLC, Civ. No. 06-4681, 2009 WL 900167, at *8 (D.N.J. Mar. 31, 2009). The Rule itself offers that appropriate methods of providing notice include mail, electronic means, or any other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

Actual notice to class members is not required to satisfy due process in federal class action litigation. *Schmidt v. Jaguar Land Rover N. Am., LLC*, Civ. No. 18-8528, 2026 WL 252558, at *3 (D.N.J. Jan. 30, 2026) (collecting cases). Consistent with this jurisprudence, "Courts have held that notice to the last known address as well as notice to an incorrect address where the defendant had been notified of the correct address [meets] the due process requirement of notice through reasonable effort." *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 238 (D.N.J. 1997). *See also Schmidt*, 2026 WL 252558, at *3-4 (rejecting movant's argument that his failure to receive class settlement notice, because it was mailed to movant's former address, warranted a relaxation of the deadline for filing claim for settlement benefits, where notice complied with form and procedure approved by the Court under Rule 23); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 2000 WL 708253, at *1 (E.D. Pa. May 18, 2000) ("[A]ctual receipt of notice by each class member is not necessary to satisfy due process where the notice given was, as it was here, reasonable and the best notice practicable."). Concerning the due process requirements of class notice, the Third Circuit recently held: "As is

by now pellucid, due process demands only 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Perrigo Institutional Inv. Grp. v. Papa*, 150 F.4th 206, 220 (3d Cir. 2025) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Here, the Court approved the Notice Plan, including the form and content of the Settlement Class Notice as well as the means for distributing it. *See* Preliminary Approval Order ¶ 7. The Court expressly found that "the mailing of the Settlement Class Notice in the manner set forth in the Settlement, as well as the establishment of a settlement website and toll-free number, satisfies due process. The foregoing is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Settlement Class Members entitled to Settlement Class Notice." *Id.* Accordingly, the Court directed implementation of the approved notice procedures, consisting of individual direct mail "to all current and former owners and lessees of Class Vehicles using BMW NA's database and information from state motor vehicle agencies obtained by Experian Information Solutions, Inc. or similar provider" and publication of the Notice on a website to be maintained by the Settlement Administrator. *Id.* Later, upon review of the affidavit provided by the Settlement Administrator in connection with the motion for final approval of the Settlement, the Court found the Notice Plan had been timely and sufficiently effectuated, thus confirming notice to the Isley Settlement Class satisfied Rule 23. *See* Final Approval Order at 2.

As to Funkhouser specifically, the Settlement Administrator reviewed its records concerning implementation of the Notice Plan. Based on that review, the Settlement Administrator confirmed that "the Notice Packet was mailed to Todd Funkhouser on October 29,

2021, at the following address: 1050 Eagle Ridge Drive, El Paso, TX 79912-7436. The notice did not come back as undeliverable." *See* Atticus Aff. ¶ 6, attached to Weller Decl. as Ex. B, Ex. 10 (D.E. 76-5 at 199-200). Funkhouser does not take the position that the Settlement Administrator used an incorrect mailing address contrary to the Notice Plan's specified procedures. Rather, he explains "he did not receive this notice packet because he was no longer living at the residence to which the Notice Packet was mailed as he was going through a divorce and had relocated and, consequently, endeavored to forward his mail to his new address." Opp'n Br. at 3. Accepting its truth for purposes of this motion, Funkhouser's assertion that he did not actually receive Notice of the Isley Class Settlement does not vitiate this Court's finding that the Class Notice and procedures for disseminating it constituted the "best notice practicable under the circumstances" and thus satisfied the due process rights of all Settlement Class members. Consequently, Funkhouser received sufficient notice, notwithstanding the fact that he no longer resided at the address where it was properly mailed.

Courts in this district have repeatedly rejected similar arguments relying on lack of actual notice, where class members have attempted to file late opt-out requests, submit claims for settlement benefits after expiration of the court-ordered deadline, or proceed with their own civil litigation. *See Schmidt*, 2026 WL 252558, at *3-4; *In re Prudential*, 2007 WL 2885814, at * 4; *In re Prudential*, 177 F.R.D. at 238. In the context of a substantially identical situation, this District enjoined an individual covered by a class action settlement from proceeding with his own claim, notwithstanding the class member's argument that he was not bound by a class settlement and final order because he did not receive actual notice of the settlement. *In re Prudential*, 2007 WL 2885814, at * 4. The Court held that "Plaintiff's argument that the Final Order and Judgment should not apply to him because he never received notice of the Class Action Settlement or an

opportunity to opt-out is unavailing. Actual receipt of individual notice is not the standard by which due process is measured. Rather, in a class action, due process is measured by the adequacy of notice." *Id.* (citing *In re Prudential*, 177 F.R.D. at 231 ("Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties.")).

The same reasoning applies here. Funkhouser's assertion that he was not aware of the Class Notice, mailed to his home address of record in accordance with the Notice Plan, does not exempt him from the Isley Class Settlement. He received adequate notice, consistent with due process. As such, he is bound by the Final Approval Order and its injunction.

Equally unavailing is Funkhouser's argument that he should be exempt from the Final Approval Order because BMW NA did not provide him with additional, special notice of the Isley Class Action and/or Settlement, outside of the Notice Plan, until his time to opt out had expired. Funkhouser stresses that, as defendants actively litigating the Texas Action, neither BMW NA nor BMW of El Paso notified him of the Isley Class Settlement until February 2022, after the opt-out period closed and, indeed, after the Final Approval Order was entered. Funkhouser argues that, by failing to provide earlier, timely disclosure in the Texas Action, BMW NA deprived him of his right to opt out of the Isley Class Settlement, which he maintains he would have exercised as evidenced, at least in part, by his inquiries concerning the *Bang v. BMW* class action and subsequent filing of his own lawsuit. However, neither class members who have instituted individual actions nor counsel representing them in those actions are entitled to particularized notice of a class action settlement and/or notice of the opt out deadline, separate and apart from the court-approved best notice practicable to the class. *In re Prudential*, 177 F.R.D. at 238-240. *See also Supermarkets Gen. Corp. v. Grinnell*, 490 F.2d 1183, 1186 (2d Cir.

1974) (holding supplemental, individualized notice to class members pursuing their own actions is not required to meet due process); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 369-70 (S.D.N.Y. 1996) (denying motion by various class members for additional time to opt out and/or for exclusion from the class, holding that "initiation of separate litigation did not confer upon these Class Members a right to notice above and beyond that due other Class Members.").

Relatedly, Funkhouser argues that he "indirectly opted out" of the Isley Class Settlement by virtue of filing of the Texas Action and his continued prosecution of that action during the time BMW NA knew of the Settlement but failed to disclose it to Funkhouser. This argument also fails to relieve Funkhouser from inclusion in the Settlement Class and, consequently, from the force of the Final Approval Order. A class member's pursuit of his own lawsuit, albeit already pending when a class action is settled, does not constitute a valid opt-out request or otherwise excuse that class member from seeking exclusion from the class according to the procedures set forth in the class notice. *In re Prudential*, 177 F.R.D. at 238 (rejecting individual class members' argument that they effectively opted out of class when they filed their own lawsuits). "Class members … must file a valid request for exclusion regardless of whether they have an individual action filed and pending prior to the opt-out deadline." *Id. See also Perrigo*, 150 F.4th at 217 ("Because Rule 23 requires a district court to prescribe the way for class members to request exclusion, [class members] have to follow [the required] instructions in order to opt out—a mere 'reasonable indication' of an intent to opt out will not do."); *In re Prudential Secs. Inc. Ltd. Partnerships Litig*., 164 F.R.D. at 370 ("It is well established that 'pendency of an individual action' does not excuse a class member from filing a valid request for exclusion."); *Supermarkets Gen. Corp. v. Grinnell Corp.*, 59 F.R.D. 512, 513 (S.D.N.Y.1973) *aff'd*, 490 F.2d

1183 (2d Cir.1974) (holding same). Indeed, here, the Notice mailed to Funkhouser and other class members expressly warned that if the class member was "already suing Defendant [BMW NA] in another action over the legal issues in this case, then you [the class member] must take steps to opt out of this Settlement" and, further, advised that the written opt-out request must be submitted to the Settlement Administrator by November 30, 2021. Weller Decl., Ex. B at Ex. 10.

Funkhouser concedes he did not submit a written request for exclusion from the Settlement. Neither his asserted lack of actual notice nor his maintenance of an individual lawsuit during the opt-out period relieve him from the Court-ordered requirements for a valid exclusion from the Settlement Class.

**C. Waiver**

Funkhouser argues BMW NA waived its right to assert that his claims are barred by res judicata and the Isley Class Settlement by failing to raise this defense in a timely manner and continuing to litigate the Texas Action. He stresses that although the Isley Settlement was reached in July 2021, and received preliminary approval the following month, BMW NA waited a year-and-a-half before amending its pleadings and discovery responses in the Texas Action to disclose reliance on the affirmative defenses release, waiver, and res judicata, based on the Class Settlement and Final Approval Order.

Funkhouser's waiver argument does not relieve him of the binding effect of the Final Approval Order. Judicial approval of a class action settlement under Rule 23 triggers the doctrine of res judicata, which precludes all class members from relitigating claims which were released in the settlement. *See Greene v. Metro. Ins. and Annuity Co.*, Civ. No. 07-2903, 2009 WL 1045016, at *6-8 (D.N.J. Apr. 20, 2009) (denying the plaintiff's motion to strike affirmative defense of res judicata asserted by the defendant based on a class action settlement and release,

where the plaintiff was a member of the class who did not opt out and his claims were covered by settlement's broad release, and granting summary judgment to defendant). *See also In re Prudential Ins. Co. of Am. Sales Practices Litig. (Matthias)*, Civ. No. 95-4704, 2008 WL 153763, at * 2 (D.N.J. Jan. 11, 2008) ("When a class action settlement is approved under Rule 23, and the requirements of due process are found to have been satisfied, res judicata attaches and all individual class members who have not opted-out are bound by the terms of the class action settlement."). The preclusive effect of a class action settlement and final approval order under Rule 23 cannot be waived by any purported delay in raising the jurisdictional defense of res judicata in an action brought or maintained by a class member bound by that settlement. *In re Prudential*, 2008 WL 153763, at * 4. A court-approved class action settlement carries jurisdictional implications that "cannot be waived through mere participation in a litigation or a failure to immediately raise it as a defense. Furthermore, to interpret a delay as a waiver would undermine the finality of the Final Order and Judgment." *Id.* (rejecting argument by class members pursuing an independent action in state court that the defendant waived res judicata defense and acquiesced in state court jurisdiction by waiting almost one year to raise the defense in a motion to dismiss).

Here, Funkhouser's contention that BMW NA waived any affirmative defense based on the preclusive effect of the Class Settlement by failing to raise it sooner is unavailing. Initially, the Court notes that, contrary to Funkhouser's assertions that information about the Class Settlement was deliberately withheld from him, the record shows that BMW NA informally disclosed its reliance on the Class Settlement only weeks after the Final Approval Order was entered, in an email exchange between counsel in which BMW NA clearly expressed its view that the continued litigation of the Texas Action was barred. Later in 2022, this reliance was

formalized by amendment of BMW NA's responsive pleadings, and then brought before the Texas Court for a ruling by way of summary judgment motion filed in 2024, albeit almost two years after entry of the Final Approval Order.

Although an earlier motion by BMW NA to enforce its rights under the Final Approval Order may have been ideal, the delay in raising defenses based on the Isley Class Settlement, continued litigation of the Texas Action, and/or lapse of time in filing this motion to enforce, here, neither constitutes waiver nor excuses Funkhouser from the reach and effect of the Final Approval Order. As discussed above, Funkhouser is a member of the Settlement Class, bound by Final Approval Order. His Texas Action claims are "Released Claims" as defined by the Class Settlement. As such, the Final Approval Order bars his claims, and Funkhouser's waiver argument does not alter the binding and preclusive effect of that Order.

**D. Rule 60 Relief**

Last, Funkhouser argues that if the Court concludes his claims are precluded by the Class Settlement, he should be relieved from enforcement of the Final Approval Order under Rule 60(b), based on his excusable neglect in failing to timely opt out of the Settlement Class, the existence of "new evidence" consisting of the Class Settlement, and/or BMW NA's misrepresentation by omission in failing to disclose the Class Settlement.

Rule 60(b) authorizes the Court to "relieve a party … from a final judgment, order, or proceeding" for various enumerated reasons, including as applicable here:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or]
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.

Fed. R. Civ. P. 60(b). In the context of a class action settlement, Rule 60(b) can serve as a vehicle by which "a class member who missed an opt out deadline or who seeks to be excluded from a class action settlement" can obtain relief upon a showing of excusable neglect, fraud, or the various other bases set forth in the Rule. *See Roofer's Pension Fund v. Papa*, Civ. No. 16-2805, 2024 WL 4205638, at *8 (D.N.J. Sep. 12, 2024), *aff'd sub nom.*, *Perrigo Institutional Inv. Grp. v. Papa*, 150 F.4th 206 (3d Cir. 2025). If the movant shows such relief is warranted, the Court can, under the Rule, extend the time to opt out of a class settlement. *Id.* at *12 ("A party's failure to timely file an opt-out request in a class action in some cases may qualify as 'excusable neglect.'") (citing *In re Ins. Brokerage Antitrust Litig.* (MDL 1663), 374 F. App'x 263, 265 (3d Cir. 2010)). However, Rule 60 imposes strict time limitations on motions made under subsections (b)(1), (b)(2), and/or (b)(3). Such motion must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c).

Here, even if the Court construed Funkhouser's reliance on Rule 60(b) in his opposition brief as a properly filed "motion," the relief he seeks is time-barred. As this Court has found, proper, mailed notice of the Class Settlement was sent to Funkhouser in October 2021. The Final Approval Order was entered on January 10, 2022. Funkhouser and the Texas Action defendants, through counsel, exchanged emails about the Class Settlement and Final Approval Order in February and March 2022. Yet, Funkhouser did not request that this Court set aside the Final Approval Order, permit his late opt out, or otherwise relieve him of the binding and final nature of the Class Settlement until October 2025, when he raised Rule 60(b)(1), (2), and (3) as bases upon which the Court should, in his view, deny this motion to enforce the Final Approval Order. Funkhouser made his request for relief under Rule 60(b) long after the time to do so expired.

And because the request exceeds the time limit imposed by the Rule itself, the Court need not reach the reasons on which Funkhouser argues Rule 60(b) relief is warranted.

## III. CONCLUSION

In sum, for the foregoing reasons, BMW NA has established that the claims asserted in the Texas Action are extinguished by the Isley Class Settlement and barred by the Final Approval Order, under which Funkhouser, as a class member, is bound. Accordingly, pursuant to the authority conferred by the All-Writs Act, the Court enforces the Final Approval Order and concludes Funkhouser is enjoined from proceeding with the Texas Action.[10]

A separate form of Order will be filed with this Opinion.

/s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge

Dated: August 31, 2026

[10] During the hearing on this motion, Funkhouser argued that, even if his claims against BMW NA are barred, he should not be enjoined from proceeding against the other Texas Action defendants, BMW of El Paso and/or Ugarte, because they had not brought a motion for injunctive relief from this Court. This argument elevates procedure over substance. Although they have not moved to enforce the Final Approval Order, BMW of El Paso and Ugarte are clearly Released Parties thereunder and are thus protected by the scope of the Settlement Agreement, as incorporated into the Final Approval Order. In other words, the Court's enforcement of the Final Approval Order and related entry of an injunction against Funkhouser applies as to all its terms, meaning he is enjoined from pursuing his claims against all Released Parties.