NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THOMAS ISLEY, et al., Plaintiffs, v. BMW OF NORTH AMERICA, LLC, Defendant. | **Civil Action No. 19-12680-AME** **OPINION** |

**ESPINOSA, U.S.M.J.**

This matter is before the Court on the motion by interested party Vanderbeek Motors, Inc. d/b/a BMW of Roseville ("VMI") to enforce the final order entered in the above-captioned action and enjoin DeShawn Black-Cunningham ("Black-Cunningham") from proceeding with a lawsuit pending in California state court [D.E. 90]. Black-Cunningham opposes the motion. The Court has considered the parties' written submissions without oral argument, *see* Fed. R. Civ. P. 78, and for the following reasons, denies the motion.

## I. BACKGROUND

VMI is an authorized BMW dealership located in Roseville, California. *See* Chapman Decl. ¶ 4, D.E. 90-3. Black-Cunningham is an individual who purchased a used BMW vehicle from VMI and subsequently filed a breach of warranty lawsuit against it. *See* Black-Cunningham Decl. ¶ 1, D.E. 95-1; Chapman Decl. ¶ 5. Because this motion for an injunction is based on a Court-approved class action settlement under Federal Rule of Civil Procedure 23, the Court will set forth relevant facts concerning that settlement and then summarize Black-Cunningham's separately filed action.

On January 5, 2022, this Court entered a Final Order and Judgment granting final approval of the settlement in the nationwide consumer class action captioned *Isley v. BMW of North America, LLC* (the "Isley Class Action"), which arose out of the alleged failure by manufacturer BMW of North America ("BMW NA") to disclose that certain BMW model vehicles contained an engine that allegedly consumed excessive oil (the "Oil Consumption Defect"). *See* Final Approval Order, D.E. 69. The Final Approval Order states that "the terms of the Settlement Agreement, including the Released Claims against all Released Parties, and of the Final Approval Order and Judgment, are binding in all respects on the Plaintiffs and all Settlement Class Members." *Id.* ¶ 12. The Settlement Class Members consist of:[1]

> All current (as of the Effective Date) and former owners and lessees in the United States, including the District of Columbia and Puerto Rico, of certain of the following U.S.-specification BMW vehicles distributed for sale, registered, and operated in the United States, including the District of Columbia and Puerto Rico: 2013-2019 650i/xi (TU1), 2013-2018 650i/xi Conv (TU1), 2013-2017 650 i/xi Coupe (TU1), 2013-2015 750i/xi (TU1), 2013-2015 750Li/Lxi (TU1), 2013-2017 550i/xi (TU1), 2014-2016 550i/xi GT (TU1), 2014-2018 X5 (TU1), and 2015-2019 X6 (TU1).

*Id.* ¶ 4.[2]

Under the Final Approval Order, Settlement Class Members are "permanently barred and enjoined from commencing, instituting, continuing, pursuing, maintaining, prosecuting, or enforcing any Released Claims (including, without limitation, in any individual, class or putative class, representative, collective or other action or proceeding, directly or indirectly, in any judicial, administrative, arbitral, or other forum) against any of the Released Parties." *Id.* ¶ 21. The Released Claims consist of "any and all claims, including demands, rights, liabilities, and

---

[1] Excluded from the Settlement Class are forty-seven identified individuals who had timely and validly opted out of the Settlement. *See* Final Approval Order ¶ 12.

[2] The BMW models listed in the Settlement Class definition are referred to as the "Class Vehicles" throughout the Settlement Agreement and Final Approval Order.

causes of action, of every nature and description that were asserted or could have been asserted in this action, which relate to oil consumption in the Class Vehicles, excluding claims for property damage or personal injury." Settlement Agreement § VII, A.[3] The term "Released Parties" includes not only BMW NA, the named Defendant in the Isley Action, but also "authorized BMW dealers, attorneys, and all other persons or entities acting on their behalf," among various others. *Id.*

On January 21, 2022, VMI sold Black-Cunningham a used 2016 BMW X6, vehicle identification number ("VIN") 5UXKU6C54G0R33965, which then had an odometer reading of 76,106 miles. *See* Black-Cunningham Decl. ¶ 3 and Ex. 1. At the time of sale, VMI provided Black-Cunningham with a report confirming that the vehicle had passed an inspection and was AutoNation 125-point Certified. *Id. See* ¶ 4 and Ex. 2. It also issued her an AutoNation Limited Warranty covering her vehicle for 90 days or 4,000 miles, whichever came first (the "AutoNation Warranty"). *Id.* ¶ 5 and Ex. 3.

Within days of owning the vehicle, Black-Cunningham began experiencing significant problems with excessive oil consumption, requiring repeated oil top-offs and multiple service visits to VMI between February and May 2022. *Id.* ¶¶ 8-14. At the service appointment on May 10, 2022, Black-Cunningham learned that her vehicle would need an engine replacement. *Id.* ¶ 14. According to Black-Cunningham's sworn statement, in discussing the matter of cost with VMI, she stated that she believed any necessary repair should be covered under the AutoNation Warranty and would not pay anything toward the replacement. *Id.* ¶ 15. She also informed VMI that, since the time of purchase, she became aware that her vehicle was part of a class action

[3] The Settlement Agreement is attached to the Chapman Declaration at Exhibit 7 and can also be found on the docket of the Isley Class Action at D.E. 54-2.

settlement that was not disclosed by VMI upon its sale of the vehicle and that she believed VMI had sold her a "lemon." *Id.*

On August 19, 2022, Black-Cunningham filed an action against VMI in the Superior Court of California, County of Sacramento, Case No. 34-2022-00325485-CU-BC-GDS (the "California Action"). *See* Chapman Decl. ¶ 5 and Ex. 1, California Action Compl. In the California Action, Black-Cunningham alleges that the BMW X6 she purchased from VMI "was delivered [to her] with serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including, but not limited to, engine issues." California Action Compl. ¶ 14. Specifically, she alleges the vehicle's engine consumed excessive oil, which caused engine malfunctions, presented safety hazards, and ultimately required a total engine replacement only five months after she purchased it from VMI. *Id.* ¶¶ 15-16. Black-Cunningham further alleges that the repairs failed to resolve the vehicle's engine problems and, thus, on July 11, 2022, she contacted VMI to revoke her acceptance of the vehicle and require the dealership repurchase it under the California consumer protection statute known as the Song-Beverly Consumer Warranty Act. *Id.* ¶¶ 22-23. The California Action Complaint asserts two causes of action against VMI for violation of that statute as follows: (1) for breach of express warranty based on the AutoNation Limited Warranty, and (2) for breach of the implied warranty of merchantability and fitness based on the sale of a defective vehicle.

VMI actively defended the California Action, including bringing an early motion for judgment on the pleadings "on the basis that [Black-Cunningham's] claims are barred by res judicata due to a nationwide class action settlement which was given final approval in federal court on January 10, 2022, prior to the time that [she] even purchased the subject vehicle."[4]

---

[4] The motion for judgment on the pleadings requested that the Superior Court of California take judicial notice of the Isley Class Action and various key documents pertaining to that action, including the

Goethals Decl. ¶¶ 14-15 and Ex. 14, Order at 1. The California Action proceeded through discovery, including Black-Cunningham's deposition taken on April 2, 2025. *See* Chapman Decl. ¶ 6 and Ex. 2. At her deposition, Black-Cunningham testified, among other things, that she did not know her vehicle was involved in the Isley Class Action Settlement at the time she purchased it from VMI and first learned of the Isley Class Action Settlement in March 2022, upon her own research into the vehicle's problems. *Id.* Ex. 2, Dep. Tr. 55:13 – 57:1. She further testified that, in or about May 2022, when she took her vehicle to VMI for another service appointment to address the ongoing oil consumption problem, VMI advised the vehicle would likely need an engine replacement and that the VIN associated "came up as part of the [Isley] lawsuit." Dep. Tr. 65:16-17. Later that same month, she brought the vehicle to VMI for an engine replacement. *See* Chapman Decl. Ex. 5.

According to her testimony, Black-Cunningham did not know at the time that a portion of the replacement cost would be covered by BMW NA. Dep. Tr. 66:22 – 67:25. She stated that the VMI service advisor contacted her a few days later to explain that the manufacturer, that is, BMW NA, would pay part of the expense and that she would have to pay for the remaining 42%. Tr. 68:2-6. Indeed, the May 17, 2022 Repair Order generated by VMI for the engine replacement states that "BMW of North America is paying the 58% and the 42% is the contribution owed by client." Chapman Decl. Ex. 5. Although that Repair Order appears to have been signed by Black-Cunningham, it is not clear if she signed it before or after the replacement was performed. *Id. See also* Dep. Tr. 69:22 – 70:7.

---

Final Approval Order and the Settlement Agreement. *See* Goethals Decl. Ex. 14 at 2. By Order of April 11, 2024, that Court denied the motion, declining to take judicial notice of the documents and additionally noting that, even it had had, the motion would nevertheless be denied because "the documents do not show for pleading purposes that [Black-Cunningham], or any predecessor in interest, was provided notice of the settlement, that [Black-Cunningham] was a member of the class, or that the claims in the federal class action were the same causes of action alleged in this action." *Id.* Ex. 14 at 5.

At her deposition, Black-Cunningham testified that she refused to bear any financial obligation for the engine replacement and ultimately did not pay anything for that service. Dep. Tr. 68:8 – 69:5. She further testified that she did not know why the cost of the engine replacement was covered and was not concerned with that detail, so long as she did not have to pay. Dep. Tr. 80:1 – 81:4. In particular, as it relates to payment by BMW NA, Black-Cunningham testified:

> Q. Do you know why the manufacturer agreed to pay for part of the repair?
>
> MR. GOETHALS: Object to the extent that it calls for a legal conclusion.
> But if you know, you can answer.
>
> THE WITNESS: I don't know why they paid anything. Again, that wasn't my concern. I just know that I wasn't going to pay anything.
>
> BY MR. ABRAMSON:
> Q. And do you know if the manufacturer agreed to pay for part of repairs because of the class action?
>
> MR. GOETHALS: Object to the extent that it calls for a legal conclusion.
> But if you know, you can answer.
>
> THE WITNESS: I don't know.

Tr. 69:6-20.

In or about April 2024, the California Action was noticed for trial to begin on January 12, 2026. *See* Goethals Decl. Ex. 15, Order at 6. VMI filed a motion for summary judgment, but the California Court terminated it on procedural grounds on December 16, 2025. *Id.* On December 18, 2025, VMI filed a motion to dismiss the California Action. *Id.* Ex. 16. By letter filed in this

action on May 28, 2026, VMI advised this Court that the trial date in the California Action was adjourned to June 1, 2026. *See* Ltr. at D.E. 99.

On this motion, VMI seeks an Order from the Court enforcing the Final Approval Order and enjoining Black-Cunningham from further prosecution of her claims in the California Action.

## II. Discussion

The All-Writs Act, 28 U.S.C. § 1651, empowers the Court to bar the relitigation of claims resolved by settlement, including claims released under a binding class action settlement. *See In re Prudential Ins. Co. of Am. Sales Pracs. Litig. (Thomas)*, Civ. No. 95-4704, 2007 WL 2885814, at *3 (D.N.J. Sept. 27, 2007) ("the All-Writs Act empowers this Court to protect its jurisdiction in overseeing the administration of class action settlements by issuing injunctions to prevent interference with its orders."). This authority permits the Court to enforce principles of res judicata, which attaches "[w]hen a class action settlement is approved under Fed. R. Civ. P. 23(e) and the requirements of due process are found to have been satisfied." *Id.* at *2. Under res judicata, "all individual class members who have not opted-out are bound by the terms of the class action settlement." *Id*. Moreover, although a federal court's injunctive power under the All-Writs Act is limited by the Anti-Injunction Act, 28 U.S.C. § 2833, it is well-settled that a district court has the power to enjoin suits that interfere with or contravene a final order in class action litigation under the Anti-Injunction Act's "in aid of jurisdiction" exception. *In re The Prudential Ins. Co. of Am. Sales Pracs. Litig. (LaMarra)*, 314 F.3d 99, 103-04 (3d Cir. 2002). *See also In re The Prudential Ins. Co. of Am. Sales Pracs. Litig. (Lowe)*, 261 F.3d 355, 365-66, 368 (3d Cir. 2001) (holding that All-Writs Act, in concert with the Anti-Injunction Act, authorizes a district court to enjoin a member of the settlement class from pursuing an individual state court action,

observing that "[i]t is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action.").

Here, upon entry of the Final Approval Order in the Isley Class Action, this Court retained continuing jurisdiction to enter such injunctions in aid of the Class Settlement. In relevant part, the Final Approval Order states:

> [T]he Court shall retain continuing jurisdiction over the Action, the Parties and the Settlement Class, and all matters relating to the interpretation, administration, implementation, effectuation and enforcement of the Settlement Agreement and this Settlement, which includes, without limitation, the Court's power pursuant to the All Writs Act, 28 U.S.C. § 1651, or any other applicable law, to enforce the above-described bar on and injunction against prosecution of any and all Released Claims.

Final Approval Order ¶ 25. In other words, the Court may enter an injunction according to the parameters set by the Final Approval Order, which bars the Settlement Class from prosecuting any and all Released Claims. *See* Final Approval Order ¶ 21. The key question on this motion is whether Black-Cunningham's California Action falls within those parameters, notwithstanding the uncontroverted fact that she purchased her vehicle after the Final Approval Order was entered.

VMI initially argues that Black-Cunningham is bound by the Final Approval Order as a member of the Settlement Class. VMI abandons this position in its reply brief, conceding that Black-Cunningham is not part of the Settlement Class, as she purchased her vehicle after the Isley Class Action had closed. However, it introduces a new argument based on her subsequent ownership of a Class Vehicle and succession to the rights attendant to that ownership. VMI asserts that Black-Cunningham's 2016 BMW X6—a Class Vehicle as defined by the Isley Class Action Settlement Agreement—was previously owned by a Settlement Class member, as confirmed by the absence of the car's VIN in the list of settlement opt-outs. VMI further notes

that the Isley Class Action Settlement Agreement and Final Approval Order "are binding in all respects on … all Settlement Class Members, as well as their heirs, executors, administrators, successors and assigns." Final Approval Order ¶ 12. Thus, VMI argues that, as the purchaser of a Class Vehicle, Black-Cunningham is a Class Member's successor and, moreover, assumed both the rights and obligations under the Final Approval Order when she benefitted from receiving an engine replacement according to the Settlement's terms. Indeed, VMI emphasizes that she "unequivocally accepted the terms of the Class Settlement and Final Approval Order in *Isley v. BMW* when she had VMI replace the Vehicle's engine due to excessive oil consumption and accepted BMW's payment of 58% of the cost to replace the engine." Chapman Decl. ¶ 20.

VMI also contends that the California Action falls within the purview of the Isley Class Action's Released Claims. It asserts that because Black-Cunningham's warranty claims relate to a Class Vehicle's alleged Oil Consumption Defect, they are barred under the terms of the Final Approval Order, which prohibits the pursuit of any claims that "relate to oil consumption in the Class Vehicles." Final Approval Order ¶ 21; Settlement Agreement § VII, A. Thus, VMI argues Black-Cunningham must be enjoined from proceeding with the California Action.

Black-Cunningham begins her opposition by pointing out that, contrary to VMI's erroneous assertion, she is not a Settlement Class Member and therefore not bound by the Class Settlement Agreement or the Final Approval Order. She then argues that VMI's motion to enjoin her from proceeding with the California Action must be denied because it is based on res judicata. She maintains that doctrine cannot apply here because she was not involved in the Isley Class Action, had no notice of that action, and seeks to pursue relief that is distinct from the claims asserted there.

Black-Cunningham stresses she did not purchase her vehicle until January 21, 2022, after the Isley Class Action had concluded, and thus necessarily was not a "current or former" owner of a Class Vehicle when the Final Approval Order was entered.[5] She also emphasizes that, having not been part of the Settlement Class, she did not receive notice of the Class Action Settlement and thus maintains that enforcing the Final Approval Order against her would contravene due process. She further argues that there is no evidence that she was in privity with a Class Member and thus cannot be deemed a successor in interest to a Class Member simply based on her subsequent purchase of a 2016 BMW X6 from VMI. Lastly, she maintains that the claims asserted in the California Action are not the same as those litigated in the Isley Class Action, stressing that her case is based on the alleged breach of the AutoNation Warranty issued by dealership VMI when it sold her a used BMW whereas, as characterized by Black-Cunningham, the Isley Class Action concerned the manufacturer's alleged breach of a new vehicle warranty. In sum, Black-Cunningham argues VMI's motion for an injunction lacks a factual or legal basis and must be denied as inconsistent with due process.

To enjoin Black-Cunningham from proceeding with the California Action, this Court must be satisfied, as a threshold matter, that she is subject to the Final Approval Order. However, on the record presented, this question remains unclear. Black-Cunningham is not a Settlement Class Member, as she was not a "current or former owner" of a Class Vehicle when the Final Approval Order was entered nor, necessarily, when the Class Notice referenced therein was disseminated to the Settlement Class. VMI concedes as much but nevertheless seeks to enforce

[5] Relatedly, Black-Cunningham asserts her vehicle is not a "Class Vehicle" because such vehicles are those owned by Settlement Class Members. However, this argument conflates Settlement Agreement's definition of Settlement Class Member with its definition of Class Vehicle, which are identified in a list set forth in Settlement Agreement, § I, A. As it relates to this motion, that list includes the BMW X6 for model years 2015 to 2019.

the Final Approval Order against Black-Cunningham as the purported successor of an unidentified Class Member's ownership rights to a Class Vehicle. This assertion elides the fact that Black-Cunningham purchased her vehicle from VMI, an authorized BMW dealership. Concluding that Black-Cunningham is a successor to a Class Member's rights and obligations under the Final Approval Order merely by virtue of owning a Class Vehicle is problematic given that she acquired the vehicle from one of the Isley Class Settlement's "Released Parties," which stood to benefit from the terms of that Settlement and the Final Approval Order. Indeed, based on the facts before the Court, VMI did not make such a disclosure to Black-Cunningham at the time of sale. However, Black-Cunningham was admittedly aware her vehicle was involved in the Isley Class Action Settlement when she brought it to VMI for an engine replacement and was informed that the manufacturer would cover part of the cost. Even so, there is no indication that she knew or should have known that such payment by BMW NA followed the Isley Settlement Agreement's schedule or that VMI handled the repair according to the terms of that Agreement. Moreover, there is no evidence that Black-Cunningham knew that by accepting the repair on those terms, she also stepped into the shoes of a Settlement Class Member. In short, while VMI argues that Black-Cunningham "unequivocally" accepted the terms of the Isley Class Settlement and Final Approval Order by agreeing to an engine replacement that would be partially paid by BMW NA, the factual foundation for this assertion is murky at best.

Even assuming Black-Cunningham could arguably be considered a Class Member's successor and thus subject to the Final Approval Order, VMI fails to carry its burden of demonstrating the Final Approval Order enjoins her from proceeding with her claims in the California Action. Those claims arise from VMI's alleged breach of express and implied warranties issued upon its January 21, 2022 sale of a Class Vehicle to Black-Cunningham. The

Final Approval Order's definition of Released Claims, while broad, extends only to those claims "that were asserted or could have been asserted in this [Isley] action." Claims arising from warranties that were not yet issued when the Isley Class Action closed on January 5, 2022, could not have been asserted in that action and thus do not fall within the scope of Released Claims.

In so concluding, this Court expresses no view on the merits of Black-Cunningham's claims in the California Action. This Court's holding is based solely on VMI's failure to establish that Black-Cunningham's claims are barred by the Final Approval Order.

## III. CONCLUSION

For the foregoing reasons, VMI has failed to establish that the Final Approval Order issued in the Isley Class Action bars Black-Cunningham from proceeding with her claims in the California Action. Accordingly, VMI's motion to enforce the Final Approval Order is denied.

A separate form of Order will be filed with this Opinion.

/s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge

Dated: August 31, 2026